UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NANCY B. NUNN, formerly known as NANCY B. DULEY, individually and ast Trustee of the Nancy B. Duley Revocable Trust, | ) ) ) | 12 C 3384 |
| | ) | |
| Plaintiff, | ) | Judge Feinerman |
| | ) | |
| vs. | ) | |
| | ) | |
| JAMES S. WITHERELL, individually and as Trustee of the James S. Witherell Trust dated June 17, 1997, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Nancy B. Nunn brought this suit against James S. Witherell, premising jurisdiction under the diversity statute, 28 U.S.C. § 1332(a). Doc. 1. Conceding that the parties are diverse, but arguing that the amount in controversy does not exceed $75,000, Witherell moves to dismiss the case under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Doc. 20. The motion is denied.

## Background

Witherell accepts as true the facts alleged in the complaint, Doc. 24 at 2-3, so his challenge to subject matter jurisdiction is facial rather than factual. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009). On a facial challenge to subject matter jurisdiction, the complaint's well-pleaded factual allegations are assumed to be true, with all reasonable inferences drawn in the plaintiff's favor. *See ibid.*; *Patel v. City of Chicago*, 383 F.3d 569, 572 (7th Cir. 2004).

1

As with a Rule 12(b)(6) motion, the court also must consider documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information subject to proper judicial notice. *See Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011); *Palay v. United States*, 349 F.3d 418, 425 n.5 (7th Cir. 2003). The following facts are stated as favorably to Nunn as permitted by the complaint and other materials that may be considered on a Rule 12(b)(1) motion.

In or around January 2006, Nunn and Witherell contributed equal sums to purchase property in Woodstock, Illinois, which they occupied together as their principal residence. Doc. 1 at ¶¶ 5, 7. Nunn and Witherell acquired ownership through the vehicle of a land trust that in turn was owned in equal shares by their respective revocable trusts. *Id*. at ¶ 5. On January 17, 2006, the parties entered into a written agreement entitled "Agreement to Own and Maintain Real Estate." *Id*. at ¶ 6. The Agreement provides in relevant part:

> [I]n the event that either Co-Owner wishes to permanently move out of the Premises[,] … such Departing Co-Owner shall provide written notice to the remaining Co-Owner … of its intent to move out, making specific reference to this agreement ("withdrawal"), … and the following shall take place: Within sixty (60) days of the date of the Departing Co-Owner's … notice of moving out … the Remaining Co-Owner shall have the Premises appraised by a certified land appraiser … to ascertain the appraised value of the Premises ("Appraised Value"). The Remaining Co-Owner shall then subtract the amount of any outstanding mortgages, liens or other encumbrances on the property from the Appraised Value to determine the equity value of the property ("Equity Value"). From and after the Departure Date, the Remaining Co-Owner shall hold the entire beneficial interest in the Trust, and hold the sole power of direction in the trust, and shall be solely responsible for the payment of all costs and disbursements with regard to the upkeep of the Trust and Premises, including but not limited to mortgage payments, from and after the date of the Departing Co-Owner's … moving out.

*Id*. at pp. 19-20.

On August 5, 2010, Nunn sent a letter to Witherell providing notification of her intent to move out permanently and to withdraw from the land trust immediately. *Id*. at ¶ 16 & pp. 25-26. In September 2010, Witherell told Nunn that he would not comply with the Agreement and would not pay the property's monthly carrying costs, and he demanded that Nunn continue to pay half of the mortgage, tax, and insurance obligations. *Id*. at ¶ 20. To avoid harm to her credit rating that would result from a default, Nunn has continued to make those payments. *Id*. at ¶ 26. The total monthly mortgage payments are $2,100, the total annual real estate tax obligations are $7,100, and the total annual homeowner's insurance premiums are $1,100. *Id*. at ¶ 34. Since August 2010, Nunn "has been forced to pay approximately $34,000 in mortgage and home equity loan payments, real estate tax payments, and insurance premiums." *Id*. at ¶ 53.

In this suit, Nunn seeks a declaratory judgment that Witherell is solely responsible for all future payments associated with the property—including the $472,000 balance of the mortgage, monthly mortgage payments of $2,100, the annual real estate taxes of $7,100, and the annual insurance premiums of $1,100. *Id*. at pp. 10-11. She also seeks $34,000 in damages for the amounts she already paid. *Id*. at pp. 12, 13, 15.

### Discussion

"The rule governing dismissal for want of jurisdiction in cases brought in the federal courts is that … the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify

dismissal." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938) (footnotes omitted). The Seventh Circuit has instructed:

> [A] proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence. Once the facts have been established, uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal. Only if it is "legally certain" that the recovery (from plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor may the case be dismissed.

*Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006) (citation omitted); *see also LM Ins. Corp. v. Spaulding Enters. Inc.*, 533 F.3d 542, 547 (7th Cir. 2008). "In suits seeking the equitable remedies of an injunction or a declaratory judgment, the amount in controversy is determined by the value to the plaintiff (or petitioner) of the object of the litigation." *America's MoneyLine, Inc. v. Coleman*, 360 F.3d 782, 786 (7th Cir. 2004). The Seventh Circuit "adhere[s] to the rule that the value of the object of the litigation is the 'pecuniary result' that would flow to the plaintiff … from the court's granting the injunction or declaratory judgment." *Ibid.* (quoting *McCarty v. Amoco Pipeline Co.*, 595 F.2d 389, 393 (7th Cir. 1979)). The Seventh Circuit adheres as well to the "either viewpoint" rule, which provides that "the jurisdictional amount should be assessed looking at either the benefit to the plaintiff or the cost to the defendant of the requested relief." *Uhl v. Thoroughbred Tech. and Telecomms., Inc.*, 309 F.3d 978, 983 (7th Cir. 2002) (citing cases); *see also BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 553 (7th Cir. 2002) ("the jurisdictional minimum in diversity cases is not the amount sought by the plaintiff but the amount at stake to either party to the suit").

Witherell contends that the amount in controversy is $34,000, the damages Nunn seeks for the mortgage, tax, and insurance payments she has made since August 2010. Doc. 24 at 1-2. That figure ignores the additional benefit that Nunn stands to gain, and that Witherell stands to lose, if Nunn receives the declaratory relief she seeks—relief from any obligation for future mortgage payments, real estate taxes, and insurance premiums. To resolve this motion, it is necessary to consider only the real estate taxes, which are $7,100 per year, and the insurance premiums, which run $1,100 per year. If being relieved of an annual $4,100 payment obligation (Nunn's share of the annual insurance and tax payments) is worth more than $41,000, then the amount in controversy exceeds $75,000, since $41,000 plus the $34,000 Nunn seeks in accrued damages equals $75,000.

Nunn's annual payment obligation is akin to an annuity, which is "an amount payable yearly or at other regular intervals … for a certain or uncertain period (as for years, for life, or in perpetuity)." *Rousey v. Jacoway*, 544 U.S. 320, 330 (2005) (internal quotation marks omitted) (omissions in original). Although the obligation has no fixed stopping point—Nunn and Witherell can hardly stop paying property taxes, and the mortgage agreement with their bank presumably requires that they maintain insurance on the property—the court will assume a twenty-year term and calculate the net present value of her obligation over that term. *See Travelers Cas. & Sur. Co. of Am., Inc. v. Nw. Mut. Life Ins. Co.*, 480 F.3d 499, 501 (7th Cir. 2007) (calculating the net present value of an insurance policy for purposes of quantifying the amount in controversy); *Randall v. Goldmark*, 495 F.2d 356, 361 (1st Cir. 1974) ("what must be shown is not the ultimate gross, but the present discounted value of the future payments"). The net present value of an annuity turns on the discount rate, the annual payment amount, and the number of years. *See* William L. Megginson & Scott B.

5

Smart, *Introduction to Corporate Finance, 2E*, 102 (Jack W. Calhoun *et al.* eds., South-Western 2009). Thirty-year government bonds are currently auctioning at about a 3% interest rate, *see Recent Note, Bond, and TIPS Auction Results*, http://www.treasurydirect.gov/RI/OFNtebnd (last visited Sept. 17, 2012), so a 3% discount rate will be used. *Cf. Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 537 (1983) ("The discount rate [in determining the net present value of damages consisting of a lost future stream of income] should be based on the rate of interest that would be earned on the best and safest investments.") (internal quotation marks omitted); *In re Federal-Mogul Global, Inc.*, 330 B.R. 133, 164 (Bankr. D. Del. 2005). Applying a 3% discount rate to a $4,100 annual payment over a twenty-year term yields a net present value of $60,997.65, more than enough to satisfy the jurisdictional minimum. Substituting a 7.5% discount rate, which is high by today's standards, would yield a net present value of $41,797.41, still sufficient under § 1332(a).

Selecting a discount rate involves guesswork. But such guesswork is inherent is determining whether the jurisdictional minimum is satisfied in whole or in part by an anticipated stream of payments, and the benefit of the doubt in selecting a discount rate should be given to the proponent of federal jurisdiction. The point is illustrated by *Travelers Casualty & Surety Co. of America v. Northwestern Mutual Life Insurance Co.*, *supra*, where the Seventh Circuit used a 5% discount rate rather than a 10% discount rate under circumstances where only the former resulted in the jurisdictional minimum being satisfied. 480 F.3d at 501. As the court explained, "satisfaction of the jurisdictional minimum in the diversity statute requires merely that the plaintiff have a colorable, which is to say a nonnegligible, prospect of being able to recover that amount in a trial." *Ibid.*; *see also Sadowski*, 441 F.3d at 541 ("Whether damages will exceed $75,000 is not a fact but a prediction, and with respect to

6

that subject the court must decide whether to a legal certainty … the claim is really for less than the jurisdictional amount.") (internal quotation marks omitted) (omissions in original). Here, given the range of potentially appropriate discount rates, there is a nonnegligible prospect that the value to Nunn of this litigation exceeds the jurisdictional minimum.

Witherell submits that Nunn's avoidance of annual insurance and tax payments should not count towards the amount in controversy. Those payments, Witherell contends, are wholly dependent on future contingencies; if the property is sold, for example, Nunn will no longer have to make the payments. Doc. 24 at 7. The Supreme Court rejected that line of thinking in *Aetna Casualty & Surety Co. v. Flowers*, 330 U.S. 464 (1947). The plaintiff in *Flowers*, a widow, sued her deceased husband's former employer and the employer's insurer for death benefits; she invoked state law in seeking burial expenses plus $5,000, the maximum allowable by the governing state statute, which exceeded the then-jurisdictional minimum of $3,000; and the defendants removed the case to federal court. *Id*. at 465-66. The Sixth Circuit held that the case had been improperly removed, reasoning that the benefit would be paid in installments and that the installment payments would cease if the plaintiff remarried or died. *Id*. at 467.

The Supreme Court reversed. The Court acknowledged that if "judgment could be entered only for the installments due at the commencement of the suit, future installments could not be considered in determining whether the jurisdictional amount was involved, even though the judgment would be determinative of liability for future installments as they accrued." *Ibid*. (citation omitted). The Court held, however, that the widow's suit put the entire benefit at issue, not just the installments then due and owing. *Id*. at 467-68. The Court then addressed whether "the fact that it cannot be known as

a matter of absolute certainty that the amount which may ultimately be paid, if [the widow] prevails, will exceed $3,000 mean[s] that the jurisdictional amount is lacking." *Id*. at 468. On that point, the Court held that it had

> rejected such a restrictive interpretation of the statute creating diversity jurisdiction. It has held that a possibility that payments will terminate before the total reaches the jurisdictional minimum is immaterial if the right to all the payments is in issue. Future payments are not in any proper sense contingent, although they may be decreased or cut off altogether by the operation of conditions subsequent. And there is no suggestion that by reason of life expectancy or law of averages the maximum amount recoverable can be expected to fall below the jurisdictional minimum.

*Ibid*. (citations omitted). In support, *Flowers* cited *Thompson v. Thompson*, 226 U.S. 551 (1913), *overruled in part on other grounds*, *Vanderbilt v. Vanderbilt*, 354 U.S. 416 (1957), which held that future maintenance payments owed by a man to his former wife were properly considered in calculating the amount in controversy even though the payments could be reduced or eliminated upon the occurrence of certain events, such as the man's death. *Id*. at 559-60. Along the same lines is *Meridian Security Insurance Co. v. Sadowski*, *supra*, an insurance coverage case, where the Seventh Circuit held that the insured's potential monetary liability in the underlying suit counted towards the amount in controversy even though the underlying suit had not been resolved—that is, even though the insurer would owe no indemnity if the insured ultimately prevailed in the underlying suit. 441 F.3d at 539.

The same result obtains here. Although it is possible that the property could be sold before Nunn's future insurance and tax outlays exceed $41,000 (measured in current dollars), that possibility and others like it do not warrant excluding those outlays from the amount in controversy. To support

the contrary view, Witherell cites *Monarch Life Insurance Co. v. Broches*, 2004 WL 1718660 (N.D. Ill. July 29, 2004), where an insurance company sought a declaration that it had no obligation to pay the defendant $3,000 per month under a disability insurance policy; it also sought to recover $30,000 it had already paid. *Broches* held that future payments could not be considered in calculating the amount in controversy because neither party "dispute[d] the validity of the policy." *Id*. at *3. In so holding, *Broches* relied heavily on *Keck v. Fidelity & Casualty Co. of New York*, 359 F.2d 840 (7th Cir. 1966), which ruled that "[f]uture benefits payable under a contract of insurance may be used to compute the sum in controversy for jurisdictional purposes only when the validity of the insurance policy itself, and not merely the presence or absence of conditions measuring the insurer's liability thereunder, is the matter in dispute." *Id*. at 841; *see also Hawkins v. Aid Ass'n for Lutherans*, 338 F.3d 801, 805 (7th Cir. 2003) ("when the validity of a policy (as opposed to the insurer's obligation to pay) is in dispute, the face value of that policy is a proper measure of the amount-in-controversy").

Here, by contrast to the circumstances in *Broches* and *Keck*, Nunn's claim does concern the validity of the Agreement. According to Nunn, by insisting that she continue to pay one-half of the insurance, tax, and other obligations related to the property, Witherell has effectively repudiated the Agreement. Doc. 1 at ¶ 43; Doc. 31 at 12 (claiming that Witherell "takes a position … that the Agreement was somehow invalid"), 14 (claiming that Witherell "repudiated … the Agreement"). Witherell vigorously denies that he has repudiated the Agreement, contending instead that his actions affirm and properly effectuate the Agreement. Doc. 35 at 2-4. Whether Witherell *actually* repudiated the Agreement by insisting that Nunn continue to pay one-half of the property's carrying costs after August 2010 will be resolved on the merits. All that matters at the Rule 12(b)(1) stage is that Nunn has

*claimed* that Witherell's actions constitute a repudiation; this is sufficient to allow her future payment obligations to be considered when determining whether the jurisdictional minimum has been satisfied. *See Davis v. Am. Foundry Equip. Co.*, 94 F.2d 441, 442-43 (7th Cir. 1938) (holding that the then-jurisdictional minimum of $3,000 was satisfied where the plaintiff sued for $2,000 past due on a contract and for a declaration that the contract was valid); *Interson Research Assocs., Ltd. v. Topcon Corp.*, 1995 WL 535104, *4 (N.D. Ill. Sept. 1, 1995) (distinguishing *Keck* on the ground that the defendant had repudiated the contract, thereby making it appropriate to consider future payments owed under the contract in calculating the amount in controversy).

### Conclusion

For the foregoing reasons, the jurisdictional minimum under 28 U.S.C. § 1332(a) is satisfied, Nunn properly invoked the court's diversity jurisdiction, and Witherell's motion to dismiss is denied.

September 20, 2012

_____

United States District Judge